UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
SCE GROUP INC. d/b/a SIN CITY ENTERTAINMENT

                                Plaintiffs'

-against-

THE CITY OF NEW YORK; BILL DE BLASIO, as Mayor of
the City of New York; JAMES P. O'NEILL, as Former
Commissioner, Police Department City of New York;
and ZACHARY W. CARTER, as Former Corporation Counsel,
New York City Law Department, each sued in their official
capacities.

                                Defendants'
-------------------------------------------------------------------------X

Amended Complaint

18 cv 8909 (AT)

Jury Trial Demand

## INTRODUCTION

1. Plaintiff SCE GROUP INC. d/b/a SIN CITY ENTERTAINMENT, allege that defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER managed and administered a discriminatory nuisance abatement program that forces ordinary, innocent people and businesses to waive their constitutional rights without being accused, much less convicted, of a crime.

2. Plaintiff operated an adult entertainment lounge in the Bronx.

3. Defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER through their management, administrative and legal actions coerced plaintiff to waive its Fourth Amendment rights and right of access to the courts simply because individuals unconnected to the business allegedly sold drugs to undercover police officers.

4. Defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER through their management, administrative and legal actions targeted plaintiff under the nuisance abatement law.

5. Plaintiff alleges that as managed and administered by defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER, the nuisance abatement law declares property to be a "public nuisance" and subject to closure simply because it is the *site* of an alleged criminal offense.

6. Plaintiff alleges that the identity of the alleged perpetrator, as well as the culpability of the property owner and leaseholder, is irrelevant.

7. Plaintiff alleges that property owners and leaseholders can be (and are) punished because their property was the situs of alleged wrongdoing by others.

8. Plaintiff alleges that NYPD Legal Bureau and New York City Law Department attorneys churn out hundreds or even thousands of these nuisance abatement actions every year, filing legal documents based on stale and unreliable information provided by the police.

9. Plaintiff alleges that NYPD Legal Bureau and New York City Law Department attorneys conduct no independent investigation to ensure that the allegations filed in such legal documents are true or that eviction is warranted.

10. Plaintiff alleges that NYPD Legal Bureau and New York City Law Department attorneys use these nuisance abatement actions to compel property owners and leaseholders to enter into settlement agreements waiving their constitutional rights.

11. Plaintiff alleges that as a condition of avoiding eviction, NYPD Legal Bureau and New York City Law Department attorneys require property owners and leaseholders to consent to warrantless searches, to provide unfettered access to video surveillance systems, to consent to

2

future fines and closing orders without any judicial hearings where evidence may be presented and challenged.

12. Plaintiff alleges that these coercive settlement agreements under the nuisance abatement law violate the Fourteenth Amendment.

## JURISDICTION AND VENUE

13. The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

    a. the Civil Rights Act of 1871, 42 U.S.C. § 1983, provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

## PLAINTIFF

14. Plaintiff SCE GROUP INC. d/b/a SIN CITY ENTERTAINMENT, is a domestic business corporation legally operating under the laws of the State of New York, and at all relevant times operated as an adult entertainment business 2520 Park Avenue Bronx, N.Y. 10451.

## DEFENDANTS'

15. Defendant THE CITY OF NEW YORK is a municipal corporation organized under the laws of the State of New York.

16. Defendant BILL DE BLASIO, as Mayor of the City of New York. He is responsible for supervising the Police Department City of New York, New York City Law Department and defendants' JAMES P. O'NEILL and ZACHARY W. CARTER.

17. Defendant JAMES P. O'NEILL, as Former Commissioner, Police Department City of New York. He is responsible for managing the Police Department City of New York.

18. Defendant ZACHARY W. CARTER, as Former Corporation Counsel, New York City Law Department. He is responsible for managing the New York City Law Department.

3

## BACKGROUND

19. Plaintiff allege that 2520 Park Avenue Bronx, N.Y. 10451, is located within Defendant THE CITY OF NEW YORK Bronx Community Board No.: 1, encompassing the neighborhoods of Melrose, Mott Haven and Port Morris, zip codes 10451, 10454, 10455 and 10456.

20. Plaintiff allege that according to Defendant THE CITY OF NEW YORK'S data, Bronx Community Board No.: 1, as of 2010, the population estimated to be 91,497 residents.

21. Plaintiff allege that according to Defendant THE CITY OF NEW YORK'S data, Bronx Community Board No.: 1, as of 2010, the population demographics (percentages) includes: 1.6 White (Non-Hispanic), 25.9 Black (Non-Hispanic), .6 Asian (Non-Hispanic), .2 Other (Non-Hispanic) and 70.9 Hispanic (Of any race) and, .8 Two or more races (Non-Hispanic).

22. Plaintiff allege that according to Defendant THE CITY OF NEW YORK'S data, Bronx Community Board No.: 1, as of 2010, 2520 Park Avenue Bronx, N.Y. 10451 is located within a Light Industrial Business Zone classified as M1-4.

23. Plaintiff SCE GROUP INC. d/b/a SIN CITY ENTERTAINMENT allege that on April 4, 2002, after performing some market research, the corporation invest in operating an adult entertainment lounge at 2520 Park Avenue Bronx, N.Y. 10451. This location was particularly attractive due to its location within a Light Industrial Business Zone classified as M1-4.

24. Plaintiff SCE GROUP INC. d/b/a SIN CITY ENTERTAINMENT alleges that the underserved target market are people (primarily persons of color) culturally connected to the hip-hop community with more than $500 billion in discretionary income to spend upon

entertainment.

25. Plaintiff SCE GROUP INC. d/b/a SIN CITY ENTERTAINMENT alleges that the underserved target market includes celebrities from the sports, media and entertainment industries.

26. Plaintiff SCE GROUP INC. d/b/a SIN CITY ENTERTAINMENT allege that on or about April 4, 2002, there was a public filing within the New York State Department of State Division of Corporations to establish the domestic limited liability company.

27. Plaintiff SCE GROUP INC. d/b/a SIN CITY ENTERTAINMENT allege that shortly thereafter, there was a public filing within the New York State Liquor Authority to establish On-Premises (OP) Liquor Licenses for 2520 Park Avenue Bronx, N.Y. 10451.

28. Plaintiff SCE GROUP INC. d/b/a SIN CITY ENTERTAINMENT alleges that during the period, modifications were made to 2520 Park Avenue Bronx, N.Y. 10451.

29. Plaintiff SCE GROUP INC. d/b/a SIN CITY ENTERTAINMENT alleges that in or around 2003, they opened for business and began serving a target market culturally connected to the hip-hop community.

## THE NUISANCE ABATEMENT PROGRAM

30. Plaintiff alleges that on or around February 1, 2016, Fern A. Fisher, Deputy Chief Administrative Judge for the New York City Courts, issued an Advisory Notice raising concerns about defendants' THE CITY OF NEW YORK'S management and application of the nuisance abatement law.

31. Plaintiff alleges that Judge Fisher noted that there has been public concern that nuisance abatement actions have created unintended consequences, as individuals who are not involved in criminal activity are evicted from their homes.

32. Plaintiff alleges that Judge Fisher noted that the CIs (confidential informants) rarely identity the individuals from whom they bought controlled substances. The affidavits are very general and do not reference an individual defendant.

33. Plaintiff alleges that defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER engages in a policy or practice of pursuing nuisance abatement actions against individuals and businesses who are not convicted or accused of committing the criminal offenses constituting the supposed "public nuisance" justifying eviction.

34. Plaintiff alleges that defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER can pursue this policy or practice because the nuisance abatement law does not provide any defense based on innocence. Under the ordinance, the fact that a different person committed a crime is not a defense.

35. Plaintiff alleges that the nuisance abatement law's failure to provide a defense based on innocence violates the Fourteenth Amendment to the United States Constitution.

36. Plaintiff alleges that defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER engages in a policy or practice of using nuisance abatement actions to pressure property owners and leaseholders who have not been convicted of any crime into settlements waiving their constitutional rights. The NYPD Legal Bureau and New York City Law Department attorneys routinely inform property owners and leaseholders that they must consent to agreements in order to avoid eviction.

37. Plaintiff alleges that defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER pursues a policy or practice of requiring innocent individuals and businesses, as a condition of avoiding eviction in a nuisance

abatement action, to sign agreements waiving their Fourth Amendment right to be free from warrantless searches (including both consenting to physical searches and agreeing to provide access to camera surveillance systems).

38. Plaintiff alleges that defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER pursues these agreements without regard to whether the individuals and businesses required to waive their Fourth Amendment rights have been convicted or even accused of any crime. As a result, defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER regularly imposes such agreements on individuals and businesses who have *not* been convicted or accused of any offense.

39. Plaintiff alleges that defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER follows this policy or practice notwithstanding that the Fourth Amendment prohibits the government from requiring blanket waivers of the right to be free from warrantless searches outside the context of closely regulated industries. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978).

40. Plaintiff alleges that defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER'S policy or practice of requiring innocent leaseholders and property owners to waive their right to be free from warrantless searches in order to avoid eviction violates the Due Process Clause of the Fourteenth Amendment.

41. Plaintiff alleges that defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER pursues a policy or practice of requiring innocent individuals and businesses, as a condition of avoiding eviction under the

nuisance abatement law, to sign agreements consenting to imposition of future sanctions for future alleged criminal offenses without judicial intervention and thus waiving their constitutional right to access the courts.

42. Plaintiff alleges that defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER pursues these agreements without regard to whether the individuals or businesses required to waive their right of access to the courts have been convicted or even accused of any crime. As a result, defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER regularly imposes such agreements on individuals and businesses who have *not* been convicted or accused of any offense.

43. Plaintiff alleges that defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER follows this policy or practice notwithstanding that the Constitution guarantees the right to a hearing and opportunity to be heard prior to deprivations of property, including "an informed evaluation by a neutral official." *Fuentes v. Shevin*, 407 U.S. 67, 83 (1972).

44. Plaintiff alleges that defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER'Spolicy or practice of requiring property owners and leaseholders to waive their right of access to the courts in order to avoid eviction violates the Due Process Clause of the Fourteenth Amendment.

**NYPD Undercover Narcotics Operations**

45. Plaintiff alleges that between December 18, 2014, and May 28, 2016, with the goal of closing its adult entertainment business, defendant THE CITY OF NEW YORK sent four (4) different undercover officers into the location to purchase narcotics.

46. Plaintiff alleges that between December 18, 2014, and May 28, 2016, defendant THE CITY OF NEW YORK sent UC Nos.: 141, 161, 163 and 253, to the location on eighty-nine (89) different occasions.

47. Plaintiff alleges that between December 18, 2014, and May 28, 2016, UC Nos.: 141, 161, 163 and 253, after contacting persons unconnected to the business, having them meet at or near the business were able to obtain a positive purchase on twenty-five (25) different occasions.

48. Plaintiff alleges that between December 18, 2014, and May 28, 2016, UC Nos.: 141, 161, 163 and 253, after contacting persons unconnected to the business, having them meet at or near the business were able to obtain a positive purchase on twenty-five (25) different occasions.

**UC No.: 141**

49. Plaintiff alleges that on or about December 31, 2014, UC No.: 141, recorded a successful purchase of cocaine from "Trouble" a person unconnected to the business.

50. Plaintiff alleges that on or about January 22, 2015, UC No.: 141, recorded a successful purchase of cocaine from "Trouble" a person unconnected to the business.

51. Plaintiff alleges that on or about May 27, 2015, UC No.: 141, recorded a successful purchase of cocaine from "Trouble" a person unconnected to the business.

52. Plaintiff alleges that on or about April 3, 2015, UC No.: 141, recorded a successful purchase of cocaine from "Trouble" a person unconnected to the business.

53. Plaintiff alleges that on or about October 3, 2015, UC No.: 141, recorded a successful purchase of cocaine from "Starr" a person unconnected to the business.

**UC No.: 161**

54. Plaintiff alleges that on or about December 18, 2014, UC No.: 161, recorded a successful purchase of cocaine from "Dynamite" a person unconnected to the business.

55. Plaintiff alleges that on or about December 31, 2014, UC No.: 161, recorded a successful purchase of cocaine from "Dynamite" a person unconnected to the business.

56. Plaintiff alleges that on or about January 15, 2015, UC No.: 161, recorded a successful purchase of cocaine from "Dynamite" a person unconnected to the business.

57. Plaintiff alleges that on or about November 5, 2105, UC No.: 161, recorded a successful purchase of cocaine from "Ariel" a person unconnected to the business.

**UC No.: 163**

58. Plaintiff alleges that on or about December 18, 2014, UC No.: 163, recorded a successful purchase of cocaine from "Ariel" a person unconnected to the business.

59. Plaintiff alleges that on or about December 24, 2014, UC No.: 163, recorded a successful purchase of cocaine from "Ariel" a person unconnected to the business.

60. Plaintiff alleges that on or about December 31, 2014, UC No.: 163, recorded a successful purchase of cocaine from "Ariel" a person unconnected to the business.

61. Plaintiff alleges that on or about January 15, 2015, UC No.: 163, recorded a successful purchase of cocaine from "Ariel" a person unconnected to the business.

62. Plaintiff alleges that on or about January 22, 2015, UC No.: 163, recorded a successful purchase of cocaine from "Ariel" a person unconnected to the business.

63. Plaintiff alleges that on or about December 6, 2105, UC No.: 163, recorded a successful purchase of cocaine from "Remi" a person unconnected to the business.

64. Plaintiff alleges that on or about December 12, 2015, UC No.: 163, recorded successful purchases of cocaine from "Rosanna Brooks and Isaac Flores" persons unconnected to the business.

65. Plaintiff alleges that on or about December 23, 2015, UC No.: 163, recorded successful purchases of cocaine from "Rosanna Brooks and Claudia Pena" persons unconnected to the business.

66. Plaintiff alleges that on or about January 7, 2016, UC No.: 163, recorded successful purchases of cocaine from "Rosanna Brooks and Claudia Pena" persons unconnected to the business.

**UC No.: 253**

67. Plaintiff alleges that on or about January 15, 2015, UC No.: 253, recorded a successful purchase of cocaine from "Finese" a person unconnected to the business.

68. Plaintiff alleges that on or about March 12, 2015, UC No.: 253, recorded a successful purchase of cocaine from "Stacey" a person unconnected to the business.

69. Plaintiff alleges that on or about March 27, 2015, UC No.: 253, recorded a successful purchase of cocaine from "Janae Ellis" a person unconnected to the business.

70. Plaintiff alleges that on or about June 10, 2015, UC No.: 253, recorded a successful purchase of cocaine from "Finese" a person unconnected to the business.

71. Plaintiff alleges that on or about October 3, 2015, UC No.: 253, recorded a successful purchase of cocaine from "Finese" a person unconnected to the business.

72. Plaintiff alleges that on or about October 31, 2015, UC No.: 253, recorded a successful purchase of cocaine from "Finese" a person unconnected to the business.

73. Plaintiff alleges that on or about November 14, 2015, UC No.: 253, recorded successful purchases of cocaine from "Finese" persons unconnected to the business.

**The Nuisance Abatement Action**

74. Plaintiff alleges that in or around October 2016, the New York City Council introduced 13 bills called the Nuisance Abatement Fairness Act in response to a New York Daily News and ProPublica investigation that found the New York City Police Department has abused the decades-old law.

75. Plaintiff alleges that defendant THE CITY OF NEW YORK enacted the nuisance abatement law in the 1970s to push the sex industry out of Times Square.

76. Plaintiff alleges that since then, defendant THE CITY OF NEW YORK through the NYPD has greatly expanded its use, targeting individuals, businesses and homes it said were the sites of repeated criminal activity.

77. Plaintiff alleges that defendant THE CITY OF NEW YORK through the NYPD has filed more than 2,609 petitions from 2013 through 2015 alone.

78. Plaintiff alleges that the New York Daily News and ProPublica analyzed more than 1,100 cases filed during that period, and found the targets were frequently households with one or more members accused of low-level drug charges, and immigrant-owned shops accused of selling alcohol to underage auxiliary police officers.

79. Plaintiff alleges that the targets were almost exclusively located in communities of color.

80. Plaintiff alleges that in some instances, nuisance cases went forward even after the criminal cases that spurred them fell apart and charges were dismissed.

81. Plaintiff alleges that defendant THE CITY OF NEW YORK through the NYPD's Legal Bureau initiated nearly every case with a request for an *ex-parte* court order closing the location without warning, forcing individuals and businesses to negotiate settlements while unable to earn a living.

82. Plaintiff alleges that defendant THE CITY OF NEW YORK through the NYPD's Legal Bureau would legally 'coerce' business owners to agree to unfettered access to surveillance cameras and data-storing identification readers and pay civil penalties to stay in business.

83. Plaintiff alleges that in or around June 2016, defendant THE CITY OF NEW YORK through the NYPD's Legal Bureau filed a petition against THE LAND AND BUILDIG KNOWN AS 2520 PARK AVENUE, TAX BLOCK 2322, TAX LOT 15, COUNTY OF BRONX, CITY AND STATE of NEW YORK; 2500 PARK AVENUE REALTY; SCE GROUP INC.; "JOHN DOE" and "JANE DOE"..., in the Supreme Court of the State of New York, County of New York Index No.: 250804/16, seeking an preliminary and permanent injunction, enjoining a public nuisance within the ground floor commercial premises located at 2520 Park Avenue Bronx, N.Y., closing the subject premises for a period of one (1) year from the posting of the judgment and other legal remedies.

84. Plaintiff alleges that defendant THE CITY OF NEW YORK'S actions through the NYPD's Legal Bureau would have 'forced' its multimillion-dollar business to cease operations.

85. Plaintiff alleges that on or about November 7, 2016, faced with losing everything, it entered into a 'coerced' Stipulation of Settlement with defendant THE CITY OF NEW YORK through the NYPD Legal Bureau and New York City Law Department, consenting to a

'reasonable' number of unannounced business inspections for a period of one (1) year, payment of one hundred thousand dollars ($100,000.00) payable to defendant THE CITY OF NEW YORK in full payment of civil penalties, and other remedies.

86. Plaintiff alleges that Defendant THE CITY OF NEW YORK through the NYPD Legal Bureau's discriminatory application of the nuisance abatement law was orchestrated to drive it out of business; thereby enabling politically connected parties to purchase its devalued property for a lucrative development to its detriment.

87. Plaintiff alleges that on or about July 6, 2017, it ceased operating as an adult entertainment lounge.

88. Plaintiff alleges that collective actions of defendant THE CITY OF NEW YORK through its agents' defendants' BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER ultimately caused its multimillion-dollar business to cease operations.

89. Plaintiff alleges that collective actions of Defendant THE CITY OF NEW YORK through its agents' defendants' BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER have caused it to sustain considerable economic damages.

90. Plaintiff alleges that collective actions of Defendant THE CITY OF NEW YORK through its agents' defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER have caused it to expend significant legal costs.

91. Plaintiff alleges that collective actions of Defendant THE CITY OF NEW YORK through its agents' defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER'S actions are in violation of The Civil Rights Act of 1871, 42 U.S.C. § 1983 Discriminatory Application of the Law and Monell.

**VIOLATIONS AND CLAIMS ALLEGED**

## COUNT I
## EQUAL PROTECTION – DISCRIMINATORY APPLICATION
## OF THE LAW
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

92. Plaintiff re-allege Paragraphs 1 through 91 and incorporate them by reference as Paragraphs 1 through 91 of Count I of this Amended Complaint.

93. Plaintiff allege that defendants' BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER under color of law personally interfered with and deprived it of its constitutional rights.

94. Plaintiff alleges that defendants' BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER in acting to deprive it of its constitutional rights, acted intentionally, knowingly, willfully, and with gross disregard of its rights.

95. Plaintiff alleges that defendants' BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER subjected the business, its patrons and other stakeholders to the discriminatory application of the nuisance abatement law.

96. Plaintiff alleges that Defendant THE CITY OF NEW YORK through the NYPD Legal Bureau and New York City Law Department's discriminatory application of the nuisance abatement law was orchestrated to drive it out of business, thereby enabling politically connected parties to purchase its devalued property for a lucrative development to its detriment.

97. Plaintiff alleges that defendants' BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER under color of law, it sustained significant losses, lost business and property valuation, incurred legal expenses, and other related costs.

## COUNT II
## MONELL CLAIM
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

98. Plaintiff re-allege Paragraphs 1 through 97 and incorporate them by reference as Paragraphs 1 through 97 of Count II of this Amended Complaint.

99. Plaintiff alleges defendant THE CITY OF NEW YORK through its agents' defendants' BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER caused its injuries.

100. Plaintiff alleges defendant THE CITY OF NEW YORK'S actions through its agents' defendants' BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER of implementing 'official and un-official' policies of the discriminatory application of the nuisance abatement law.

101. Plaintiff alleges defendant THE CITY OF NEW YORK through its agents' defendants' BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER deprived it of its constitutional and statutory rights.

102. Plaintiff alleges defendant THE CITY OF NEW YORK through its agents' defendants' BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER actions caused it injuries.

103. Plaintiff alleges defendant THE CITY OF NEW YORK through its agents' defendants' BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER caused it to sustain significant losses, lost business and property valuation, incurred legal expenses, and other related costs.

## JURY TRIAL

Plaintiff demands a trial by jury.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff demands compensatory damages from defendants' THE CITY OF NEW YORK; BILL DE BLASIO; JAMES P. O'NEILL and ZACHARY W. CARTER in an amount of $45 million dollars, plus available statutory remedies, both legal and equitable, interests and costs.

Dated: April 3, 2020
       New York, NY

                                    Respectfully submitted,

                                    By: _____
                                        Eric Sanders (ES0224)

                                    Eric Sanders, Esq.
                                    **THE SANDERS FIRM, P.C.**
                                    30 Wall Street, 8th Floor
                                    New York, NY 10005
                                    (212) 652-2782 (Business Telephone)
                                    (212) 652-2783 (Facsimile)

                                    Website: http://www.thesandersfirmpc.com